1

2

3 **UNITED STATES DISTRICT COURT**

4 **EASTERN DISTRICT OF WASHINGTON**

5 | ALISON J. SCONAWAH, | No. 1:15-CV-03120-MKD |

6 |              Plaintiff, | ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY |

7 |    vs. | JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR |

8 | CAROLYN W. COLVIN, | SUMMARY JUDGMENT |

9 | Acting Commissioner of Social Security, | ECF Nos. 14, 15 |

10 |              Defendant. | |

11      BEFORE THE COURT are the parties' cross-motions for summary

12 judgment. ECF Nos. 14, 15. The parties consented to proceed before a magistrate

13 judge. ECF No. 6. The Court, having reviewed the administrative record and the

14 parties' briefing, is fully informed. For the reasons discussed below, the Court

15 denies Plaintiff's motion (ECF No. 14) and grants Defendant's motion (ECF No.

16 15).

17

18                            **JURISDICTION**

19      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

20 1383(c)(3).

**STANDARD OF REVIEW**

A district court's review of a final decision of the Commissioner of Social Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is limited; the Commissioner's decision will be disturbed "only if it is not supported by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Id*. at 1159 (quotation and citation omitted).  Stated differently, substantial evidence equates to "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and citation omitted).  In determining whether the standard has been satisfied, a reviewing court must consider the entire record as a whole rather than searching for supporting evidence in isolation.  *Id.*

In reviewing a denial of benefits, a district court may not substitute its judgment for that of the Commissioner.  If the evidence in the record "is susceptible to more than one rational interpretation, [the court] must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district court "may not reverse an ALJ's decision on account of an error that is harmless."  *Id*.  An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination."  *Id*. at 1115 (quotation and citation omitted).  The

1  party appealing the ALJ's decision generally bears the burden of establishing that

2  it was harmed.  *Shineski v. Sanders*, 556 U.S. 396, 409-10 (2009).

3  ## FIVE-STEP EVALUATION PROCESS

4    A claimant must satisfy two conditions to be considered "disabled" within

5  the meaning of the Social Security Act.  First, the claimant must be "unable to

6  engage in any substantial gainful activity by reason of any medically determinable

7  physical or mental impairment which can be expected to result in death or which

8  has lasted or can be expected to last for a continuous period of not less than twelve

9  months."  42 U.S.C. § 1382c(a)(3)(A).  Second, the claimant's impairment must be

10  "of such severity that he is not only unable to do his previous work[,] but cannot,

11  considering his age, education, and work experience, engage in any other kind of

12  substantial gainful work which exists in the national economy."  42 U.S.C. §

13  1382c(a)(3)(B).

14    The Commissioner has established a five-step sequential analysis to

15  determine whether a claimant satisfies the above criteria.  *See* 20 C.F.R. §

16  416.920(a)(4)(i)-(v).  At step one, the Commissioner considers the claimant's work

17  activity.  20 C.F.R. § 416.920(a)(4)(i).  If the claimant is engaged in "substantial

18  gainful activity," the Commissioner must find that the claimant is not disabled.  20

19  C.F.R. § 416.920(b).

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 3

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. § 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. § 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. § 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. § 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. § 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess the claimant's "residual functional capacity."  Residual functional capacity (RFC), defined generally as the claimant's ability to perform physical and mental work activities on a sustained basis despite his or her limitations, 20 C.F.R. § 416.945(a)(1), is relevant to both the fourth and fifth steps of the analysis.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 4

At step four, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing work that he or she has performed in the past (past relevant work). 20 C.F.R. § 416.920(a)(4)(iv). If the claimant is capable of performing past relevant work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(f). If the claimant is incapable of performing such work, the analysis proceeds to step five.

At step five, the Commissioner considers whether, in view of the claimant's RFC, the claimant is capable of performing other work in the national economy. 20 C.F.R. § 416.920(a)(4)(v). In making this determination, the Commissioner must also consider vocational factors such as the claimant's age, education and past work experience. 20 C.F.R. § 416.920(a)(4)(v). If the claimant is capable of adjusting to other work, the Commissioner must find that the claimant is not disabled. 20 C.F.R. § 416.920(g)(1). If the claimant is not capable of adjusting to other work, analysis concludes with a finding that the claimant is disabled and is therefore entitled to benefits. 20 C.F.R. § 416.920(g)(1).

The claimant bears the burden of proof at steps one through four above. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If the analysis proceeds to step five, the burden shifts to the Commissioner to establish that (1) the claimant is capable of performing other work; and (2) such work "exists in significant

numbers in the national economy." 20 C.F.R. § 416.920(c)(2); *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

## ALJ'S FINDINGS

Plaintiff applied for Title XVI supplemental security income on March 1, 2012, alleging on onset of disability beginning September 4, 2006.[1]  Tr. 176-81. The application was denied initially, Tr. 117-20, and on reconsideration, Tr. 124-25.  Plaintiff appeared at a hearing before an administrative law judge (ALJ) on October 29, 2013.  Tr. 40-72.  On November 7, 2013, the ALJ denied Plaintiff's claim.  Tr. 18-32.

At step one of the sequential evaluation analysis, the ALJ found Plaintiff has not engaged in substantial gainful activity since March 12, 2012, the application date.  Tr. 20.  At step two, the ALJ found Plaintiff has the following severe impairments: alcoholism; generalized arthritis/polyarthralgias (hands, elbows,

_____

[1] The ALJ noted Plaintiff filed prior applications.  In August 2001, Plaintiff filed a Title XVI supplemental security income application; in September 2011, Plaintiff filed a Title II disability insurance benefit application.  Tr. 18.  In October 2011, both of these applications were initially denied, and, as the ALJ observed, Plaintiff did not appeal these decisions; therefore, these decisions became the final decision of the Commissioner.  Tr. 18.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 6

knees, shoulders and feet); bilateral foot problems; degenerative disc disease

cervical and lumbar spine with scoliosis/pain.  Tr. 20.  At step three, the ALJ found

Plaintiff does not have an impairment or combination of impairments that meets or

medically equals the severity of a listed impairment.  Tr. 21.  The ALJ then

concluded that Plaintiff has the RFC to perform light work, with the following

additional limitations:

> [T]he claimant is able to lift up to 20 pounds occasionally, lift and carry up
> to 10 pounds frequently in light work as defined by the regulations.  She
> must be allowed to sit or stand alternatively at 30 to 45 minute intervals for 3
> to 5 minutes, during which period she may remain on task.  She may
> frequently balance, occasionally climb ramps and stairs, stoop, kneel, crouch
> and crawl.  She may never climb ladders, ropes and scaffolds.  She may
> frequently engage in handling and fingering activities with the bilateral
> upper extremities, and may occasionally reach overhead with the same.  She
> may occasionally push, pull, and engage in foot pedal operations with the
> bilateral lower extremities.  She must avoid more than occasional exposure
> to extreme cold, vibration, and hazards such as moving machinery and
> unsecured heights.  She is fully capable of learning, remembering and
> performing simple and detailed work tasks which are performed in a low
> stress work environment, defined as one in which there is a regular
> production pace, few if any workplace changes, and no "over the shoulder"
> supervision.

Tr. 22-23.  At step four, the ALJ found Plaintiff has no past relevant work.  Tr. 30.

At step five, the ALJ found that, considering Plaintiff's age, education, work

experience, RFC, and the testimony of a vocational expert, there are jobs in

significant numbers in the national economy that Plaintiff could perform, such as

electronics worker, motel/hotel housecleaner, and garment sorter.  Tr. 31.  On that

1 | basis, the ALJ concluded that Plaintiff is not disabled as defined in the Social

2 | Security Act.  Tr. 31.

3 |       On May 22, 2015, the Appeals Council denied review of the ALJ's decision,

4 | Tr. 1-4, making the ALJ's decision the Commissioner's final decision for purposes

5 | of judicial review.  *See* 42 U.S.C. § 1383(c)(3).

6 | ## ISSUES

7 |       Plaintiff seeks judicial review of the Commissioner's final decision denying

8 | her supplemental security income under Title XVI of the Social Security Act.

9 | Plaintiff raises the following issues for review:

10 |      1.  Whether the ALJ properly weighed the lay witness testimony;

11 |      2.  Whether the ALJ properly discredited Plaintiff's symptom claims; and

12 |      3.  Whether the ALJ properly determined Plaintiff's RFC.

13 | ECF No. 14 at 1.

14 | ## DISCUSSION

15 | **A.  Lay Witness Testimony**

16 |       Plaintiff faults the ALJ for failing to credit the lay witness testimony.  ECF

17 | No. 14 at 3-8.  An ALJ need only provide germane reasons for rejecting lay

18 | witness testimony.  *Molina*, 674 F.3d at 1111.

19 |       Plaintiff contends the ALJ's erred because he "based his impressions of all

20 | witness testimonies on the credibility of Plaintiff," creating legal error that Plaintiff

1    contends requires remand.  ECF No. 14 at 4.  Specifically, Plaintiff contends that

2    the ALJ erroneously relied on the lack of medical records supporting the opinions

3    of Mr. Souza and Ms. Southard because the "medical records are sparse due to

4    [Plaintiff's] periods of homelessness and lack of transportation resources."  *Id.,*

5    citing Tr. 59, 287.  The Court concludes that the ALJ provided germane reasons for

6    rejecting the testimony of the lay witnesses.

7        *1. Mr. Souza*

8        Anthony Souza, a friend of Plaintiff, completed a function report in April

9    2012.  Tr. 206-13.  The ALJ observed that Mr. Souza noted Plaintiff "has problems

10   cooking food; she has problems using her hands to open bottles," and needs help

11   performing activities of daily living.  Tr. 27 (citing Tr. 206-07).  However, the ALJ

12   further noted that Souza stated that Plaintiff was able to shop for groceries, went on

13   occasional rock hunts, and walked a quarter of a mile before she needed to stop

14   and rest.  Tr. 27 (citing Tr. 209-11).  The ALJ gave several reasons for giving Mr.

15   Souza's opinion little weight.

16       First, the ALJ found that Mr. Souza's opinions were not supported by the

17   medical evidence, and were further contradicted by Plaintiff's

18   "non/compliance/non-pursuit" of treatment.  Tr. 27.  Lay testimony is competent

19   evidence which the Secretary must take into account.  *Stout v. Comm'r of Soc. Sec.*

20   *Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006); 20 C.F.R. §§ 404.1513(d)(4) & (e),

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 9

416.913(d)(4) & (e) (evidence from non-medical sources such as family members, friends, and neighbors, may be used to show the severity of an impairment and how it affects the claimant's ability to work).  However, [a]n ALJ may discount lay testimony if it conflicts with medical evidence.  *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001) (citing *Vincent Heckler,* 739 F.2d 1393, 1395 (9th Cir. 1984).  For example, Mr. Souza's opinion that Plaintiff "cannot do physical activities," Tr. 211, was contradicted by medical evidence showing normal functioning.  *See, e.g.,* Tr. 295 (At an examination in August 2011, F. Joseph Rinella, D.O., observed Plaintiff's disc disease, according to an MRI, was "clinically stable."  At this exam, Dr. Rinella noted that Plaintiff bent over at the waist and touched her hands to the floor; she "then walked her hands out in front of her and did a push-up!").  In addition, Mr. Souza's statements that that Plaintiff had difficulty with hand functioning, was also inconsistent with medical evidence showing normal functioning.  Tr. 311-12 (at a consultative examination in July 2012, Dr. Weis opined that Plaintiff had no major restriction in the ability to use her hands; she was able to do very fine motor tasks with her hands and had no fine motor limitations; in addition, Dr. Weis opined that Plaintiff could frequently handle, finger, and feel).  Moreover, the ALJ reasonably concluded that a person with the degree of limitation Mr. Souza described would be expected to comply with prescribed medical treatment, but the record shows that Plaintiff failed to do so,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 10

lending less credence to Mr. Souza's more dire assessed limitations. *See* Tr. 295 (Dr. Rinella noted in August 2011 that "Physical therapy would be beneficial but the patient has not demonstrated a strong trend toward compliance."). The ALJ's determination that Mr. Souza's opinion is contradicted by the medical evidence, and by Plaintiff's failure to comply with or seek medical treatment is a reasonable interpretation of the record.

Second, the ALJ rejected Mr. Souza's opinion as internally inconsistent. Tr. 27. An ALJ is permitted to reject inconsistent lay testimony. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005) (ALJ properly accepted the testimony of Bayliss's family and friends that was consistent with the record of Bayliss's activities and the objective evidence in the record; he rejected portions of their testimony that did not meet this standard.). The ALJ found that Mr. Souza's statement that Plaintiff was able to walk a quarter of a mile and occasionally go rock hunting, Tr. 27 (citing 210-11), was inconsistent with his opinion that Plaintiff is "*unable* to do physical activities," Tr. 211, and that Plaintiff "needs help daily with walking and standing." Tr. 211 (emphasis added). Moreover, Mr. Souza noted that Plaintiff has no problem with personal care, Tr. 207, which presumably includes activities that involve gripping and handling objects, such as a toothbrush, hairbrush, or a razor. The ability to handle such personal care is inconsistent with his claims that Plaintiff has severe difficulty using her hands, such as to open cans,

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 11

1    open bottles, and peel or cut vegetables.  Tr. 206.  The internal inconsistencies in

2    Mr. Souza's function report was a germane reason to discount it.

3        Third, the ALJ noted Mr. Souza appeared to base his opinions on Plaintiff's

4    subjective complaints.  Tr. 27.  An ALJ may reject lay testimony that described

5    the same limitations as a claimant's own testimony, where the ALJ gave clear and

6    convincing reasons for rejecting the claimant's testimony.  *Molina*, 674 F.3d at

7    1122.  Because, as discussed *infra*, the ALJ properly discredited Plaintiff's

8    subjective testimony, this too was a germane reason to discredit Mr. Souza's

9    opinion.

10       *2.  Ms. Southard*

11       Next, Plaintiff faults the ALJ for rejecting the opinion of Sharon Southard, a

12   friend of Plaintiff's who also submitted a functional report concerning Plaintiff's

13   limitations.[2]  Tr. 241.  Ms. Southard noted Plaintiff had trouble going up and down

14   stairs, she could not run, and she had problems using her hands.  *Id.*  Further, she

15   opined that Plaintiff could not bend over, could not lift anything, was very weak,

16   _____

17   [2] The ALJ also rejected the opinion of Melody Buris, Tr. 240, another friend of

18   Plaintiff.  Tr. 27.  However, Plaintiff does not assign error with respect to this

19   opinion.  ECF No. 14 at 5 (Plaintiff's brief notes only that "Ms. Burres lists that

20   Plaintiff has problems, but doesn't describe what she herself witnesses.").

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 12

and could "hardly get around."  *Id.*  The ALJ rejected this opinion because Ms. Southard was not an acceptable medical source, her opinions were not supported by the medical evidence or by the record as a whole, and they were contradicted by Plaintiff's failure to seek and comply with treatment.  Tr. 27-28.

First, the ALJ rejected Ms. Southard's opinion because she was not an acceptable medical source.  This was error.  As noted, the ALJ is required to consider, and must give germane reasons for discounting, lay witness testimony such as Ms. Southard's.  *See Molina*, 674 F.3d at 1114.  However, because the ALJ gave other germane reasons supported by substantial evidence for discounting Ms. Southard's opinion, this error is harmless.  *See Stout,* 454 F.3d at 1054-55 (An ALJ's error is harmless if "the ALJ's error did not materially impact his decision").

Second, the ALJ found that Ms. Southard's opinions were not supported by the medical evidence.  An ALJ may reject lay witness testimony that is inconsistent with the medical evidence.  *Bayliss*, 427 F.3d at 1218 (citation omitted).  For example, the ALJ noted that in July 2012, examining physician Dr. Weis opined that Plaintiff had no fine motor limitations, Tr. 26 (citing Tr. 311); in addition, Dr. Weis opined that Plaintiff could frequently handle, finger, and feel.  Tr. 26 (citing Tr. 311-12).  This was inconsistent with Ms. Southard's opinion that Plaintiff had problems using her hands. Tr. 241.  Furthermore, Dr. Weis opined that Plaintiff has no sitting, standing, or walking limitations, Tr. 312, which is

1    inconsistent with Ms. Southard's opinion that Plaintiff "can hardly get around ."

2    Tr. 241.

3         Third, the ALJ found that Ms. Southard's opinions were inconsistent with

4    Plaintiff's lack of treatment and lack of compliance with treatment.  Tr. 26, 28.

5    For example, Ms. Southard opined that Plaintiff "could hardly get around."  Tr.

6    241.  This severe limitation was inconsistent with Plaintiff's lack of treatment and

7    lack of compliance with treatment.  Tr. 26, 28; *see, e.g*., Tr. 295 (In August 2011,

8    Dr. Rinella noted that Plaintiff had "not demonstrated a strong trend toward

9    compliance"); Tr. 304 (In June 2012, Dr. Ragonesi noted that Plaintiff has a

10   history of not following up for ongoing care).  As the ALJ inferred, presumably a

11   person who "could hardly get around," as Ms. Southard opined, would be

12   motivated to comply and follow up with ongoing medical care.

13        Next, the ALJ noted Ms. Southard's opinions were inconsistent with the

14   record as a whole.  Tr. 28 (citing 241).  The ALJ is not required to credit opinions

15   that are unsupported by the record as a whole.  *Batson v. Comm'r of Soc. Sec.*

16   *Admin*., 359 F.3d 1190, 1195 (9th Cir. 2004).  For example, the ALJ found that the

17   record indicated Plaintiff played pool and went rock hunting, activities that

18   indicate Plaintiff is "far more agile" than Ms. Southard opined.  Tr. 28; *see, e.g.,*

19   Tr. 210 (Mr. Souza stated that Plaintiff goes rock hunting once every six months or

20   so); Tr. 304 (in June 2012, Plaintiff told examining psychologist Amanda

Ragonesi, Psy.D., that she enjoyed playing pool with friends several times a month; she also enjoyed playing video games, reading, and walking daily).   The ALJ provided several germane reasons for rejecting Ms. Southard's opinion.

## B.  Adverse Credibility Finding

Next, Plaintiff faults the ALJ for failing to provide clear and convincing reasons for discrediting her symptom claims.  ECF No. 14 at 8-11.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection."  *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted).  "General findings are insufficient; rather, the

ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id.* (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between her testimony and her conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

This Court finds the ALJ provided specific, clear, and convincing reasons for finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of her symptoms "are not entirely credible." Tr. 24.

*1. Daily Activities*

The ALJ found that the level of physical limitation Plaintiff alleged was inconsistent with her reported daily activities.  Tr. 29.  A claimant's reported daily activities can form the basis for an adverse credibility determination if they consist of activities that contradict the claimant's "other testimony" or if those activities are transferable to a work setting.  *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *see also Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989) (daily activities may be grounds for an adverse credibility finding "if a claimant is able to spend a substantial part of his day engaged in pursuits involving the performance of physical functions that are transferable to a work setting.").  Here, the ALJ found, for example, that in June 2012, Plaintiff reported that she played pool and took daily walks.  Tr. 29 (citing Tr. 304).  Plaintiff reported that she was able to prepare meals, wash dishes, vacuum, and drive a car; and she occasionally went "rock hunting."  Tr. 29 (citing Tr. 200-02).  Plaintiff also reported that she shopped for food once a week for 30 minutes, was able to walk a quarter of a mile before needing to rest, and had no problems with personal care.  Tr. 29 (citing Tr. 199, 201-03).  The ALJ found that Plaintiff's daily activities were inconsistent with her allegations that she is unable to sit, stand or walk for long periods of time.  Tr. 23 (citing Tr. 47-50).  The ALJ reasonably concluded that Plaintiff's daily activities

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 17

were inconsistent with her symptom claims.  This was a clear and convincing

reason to discredit Plaintiff's symptom claims.

### 2. Work History

Next, the ALJ found that Plaintiff's work history reflected unfavorably on

her motivation for work.  Tr. 29.  Poor work history can provide a permissible

reason to cast doubt on a claimant's purported reason for unemployment.  *See*

*Thomas*, 278 F.3d at 959.  The ALJ concluded that the record showed that Plaintiff

has never performed substantial gainful activity, and has had no earnings since

1985.  Tr. 29 (citing Tr. 182).  Yet, Plaintiff alleges that her disability began in

2006.  Tr. 30.  The ALJ opined that Plaintiff's work history suggests "she has very

poor motivation for work, and may be applying for disability to avoid working."

Tr. 29.  Plaintiff contends because she was home raising children, the ALJ should

not have relied on this reason.  However, at the hearing, Plaintiff testified that her

youngest child was 23 years old.  Tr. 59.  The ALJ's reliance on Plaintiff's poor

work history was a clear and convincing reason to discredit her symptom claims.

### 3. Lack of Compliance with Treatment

The ALJ found Plaintiff's lack of compliance with medical treatment, and

lack of treatment, diminished her credibility.  Tr. 29-30.  When weighing

credibility, the ALJ may properly consider unexplained or inadequately explained

failure to seek treatment or to follow a prescribed course of treatment.  *Tommasetti*

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 18

*v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008).  The ALJ found, for example, that despite several recommendations that Plaintiff follow up with alcohol and marijuana treatment, Plaintiff reported that she was not interested in treatment for substance dependency.[3]  Tr. 29-30 (citing Tr. 295) (Plaintiff told Dr. Rinella that she would probably not be interested treatment for alcoholism; Dr. Rinella opined that Plaintiff's elevated blood pressure and anxious fidgeting "may be due to alcohol withdrawal.").  Similarly, the ALJ observed that Plaintiff reported she obtained Medicaid in 2009, but did not seek any medical treatment or take any medications for her impairments for over a year.  Tr. 30 (citing Tr. 301, 303-04) (Plaintiff applied for Medicaid but sought no medical care).  Likewise, in August

_____

[3] Plaintiff appears to contend that the ALJ discredited her testimony, and perhaps that of the lay witnesses, based in part on Plaintiff's substance use.  *See* ECF No. 14 at 5 (alleging the ALJ discredited the lay testimony based on his negative assessment of Plaintiff's credibility and on Plaintiff's use of alcohol and marijuana).  Plaintiff misreads the record.  The ALJ cited the substance use in the context of identifying instances where Plaintiff failed to seek treatment when recommended by treatment providers; the ALJ did not simply discredit her due to the fact of substance use.  This was simply one of several instances where a treatment provider recommended treatment, which Plaintiff refused.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 19

2011, Dr. Rinella opined that physical therapy would probably be beneficial, but Plaintiff "has not demonstrated a strong trend toward compliance." Tr. 295. Moreover, the ALJ found that Plaintiff failed to return for treatment after having completed DSHS evaluations, and failed to fill a prescription pain medication, Naproxen, for over a year, prior to April 4, 2012. Tr. 30 (citing Tr. 298) (provider in April 2012 noted Plaintiff filled Naproxen once in the past year). Plaintiff's failure to seek treatment and improvement for her impairments was a clear and convincing reason to discredit her testimony.

### 4. Disability Shopping

Fourth, the ALJ found the record indicates Plaintiff may be disability shopping. Tr. 30. The ALJ certainly may consider motivation and the issue of secondary gain in rejecting symptom testimony. *See Matney ex rel. Matney v. Sullivan*, 981 F.2d 1016, 1020 (9th Cir. 1992) (Plaintiff's "well documented motivation to obtain social security benefits" supported the ALJ's credibility assessment.). The ALJ noted, for example, that in March 2009, Plaintiff reported to a treatment provider that her goal was to obtain a letter from a physician for SSI stating that she could not work. Tr. 30 (citing Tr. 379). The clinic note the ALJ relied on stated Plaintiff's "Goal is to obtain a GAU/SSI note from a physician [sic] determine reason for inability to work." Tr. 379. The note further indicated that Plaintiff had never been seen at this clinic before, and had not worked for 19

years.  *Id.*  Similarly, in September 2013, Plaintiff asked another physician, Dr.

Witherrite, to draft a letter stating that Plaintiff was disabled.  Tr. 30 (citing Tr.

412).  This physician refused because Plaintiff, again, was a new patient, and the

physician had no information about her medical impairments.  Tr. 412.

Last, the ALJ noted that Plaintiff's alleged onset of disability date is

inconsistent with the dates she filed her applications.  Tr. 30.  Although Plaintiff

alleged onset beginning in September 2006, Tr. 169, she did not file her earlier

application until 2011, approximately five years after alleged onset.  Tr. 30.  The

ALJ found "[t]his calls into question the integrity of her alleged onset date and her

overall credibility.  Tr. 30.[4]  The ALJ reasonably interpreted the evidence as

demonstrating that Plaintiff was disability shopping, which was a clear and a

convincing reason to reject her symptom claims.

Plaintiff faults the ALJ for impermissibly using personal observation when

he assessed Plaintiff's credibility.  ECF No. 14 at 11.  However, while an ALJ's

observations may not form the *sole* basis for discrediting a person's testimony,

_____

[4] Even assuming that the ALJ did err in the reasoning related to the application

date, any error is harmless because the ALJ's ultimate credibility finding is

adequately supported by substantial evidence.  *See Carmickle v. Comm'r*, 533 F.3d

1155, 1162-1163 (9th Cir. 2008).

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 21

S.S.R. 96-7p at 8, here, as indicated, the ALJ relied on more than his personal

observation.[5]  In sum, despite Plaintiff's arguments to the contrary, the ALJ

provided specific, clear, and convincing reasons for rejecting Plaintiff's testimony.

*See Ghanim*, 763 F.3d at 1163.

**C. RFC Assessment**

       Last, Plaintiff faults the ALJ for assessing an RFC that failed to include all

of Plaintiff's impairments and limitations.  ECF No. 14 at 12.  Specifically,

Plaintiff contends that the RFC was improper because it does not include

limitations assessed by the lay witnesses.  *Id.*  The Court has previously considered

the ALJ's assessment of the lay witness testimony and found no error.  An ALJ is

only required to present all limitations and restrictions supported by the record in

the RFC and to a vocational expert.  *See Burch v. Barnhart*, 400 F.2d 676, 684 (9th

Cir. 2005) (citing *Magallanes v. Bowen*, 881 F.2d 747, 756 99th Cir. 1989).  This

Court finds the assessed RFC was free of error because it included all of Plaintiff's

limitations supported by the record.

_____

[5] The ALJ observed that Plaintiff twice lifted her right arm over her head while

trying to demonstrate that she was unable to do so.  Tr. 24.

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 22

1

## CONCLUSION

2          After review, the Court finds that the ALJ's decision is supported by

3    substantial evidence and free of harmful legal error.

4          **IT IS ORDERED:**

5          1.   Plaintiff's motion for summary judgment (ECF No. 14) is **DENIED.**

6          2.   Defendant's motion for summary judgment (ECF No. 15) is **GRANTED.**

7          The District Court Executive is directed to file this Order, enter **Judgment**

8    **for Defendant**, provide copies to counsel, and **CLOSE** the file.

9          DATED this 29th day of September, 2016.

10                                      S/ Mary K. Dimke
                                        MARY K. DIMKE
11                                      UNITED STATES MAGISTRATE JUDGE

12

13

14

15

16

17

18

19

20

ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT - 23